UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| GOLD MEDAL PRODUCTS CO., <br><br> Plaintiff, <br><br> vs. <br><br> BELL FLAVORS AND FRAGRANCES, INC., *et al.*, <br><br> Defendants. | 1:16-CV-00365 <br><br> DISTRICT JUDGE SUSAN J. DLOTT <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

This matter is before the Court on Defendants' Motion to Dismiss. (Doc. 13.) Plaintiff, a flavor company, has sued Defendants, its former employee and his new employer, for misappropriation of trade secrets and confidential information. Defendants move to dismiss for lack of personal jurisdiction, failure to join an indispensable party, and failure to state a claim upon which relief can be granted. For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART** the Motion to Dismiss.

I.      BACKGROUND

A.      **Factual Allegations**

The following facts are derived from the well-pleaded allegations in the First Amended Complaint and the documents attached thereto or referenced therein. (Doc. 9.)

  1.      **The Parties**

    a.      **Gold Medal Products Co.**

Plaintiff Gold Medal Products Co. ("Gold Medal") is an Ohio corporation that makes flavored food products for the concessions industry, including Glaze Pop® popcorn coatings.

1

(*Id.* at PageID 123–24, 126.) Glaze Pop® is sold throughout the United States and the world. (*Id.* at PageID 136.) Glaze Pop® recipes include multiple separate flavor ingredients that the company combines in specific ratios to create one overall flavor. (*Id.* at PageID 128.) Gold Medal's recipes "are not readily ascertainable by inspection, testing, or other proper means." (*Id.* at PageID 136.) The specific flavor ingredients and the flavor ingredient ratios in each recipe are closely guarded secrets by Gold Medal. (*Id.* at PageID 128, 136.)

      b.      **William Todd Sunderhaus**

Defendant William Todd Sunderhaus worked at Gold Medal from March 2005 to March 2014 as the company's sole food technologist. (*Id.* at PageID 127.) He worked in product development and application to help update and develop recipes for Gold Medal food products. (*Id.*) He also worked with flavor companies to develop custom flavor ingredients for Gold Medal products. (*Id.* at PageID 128.) His responsibilities included the security of the flavor department. (*Id.*) He had access to recipes for the popcorn coatings, including the identity of each flavor ingredient, the supplier of each flavor ingredient, and the amounts and ratios of each flavor ingredient. (*Id.*)

Gold Medal alleges that Sunderhaus, during his employment with Gold Medal, "repeatedly promised orally and in writing" not to disclose the company's confidential information to third parties. (*Id.* at PageID 129.) Specifically, Gold Medal alleges that Sunderhaus agreed in writing in March 2005 and November 2010 "to comply" with the policies and procedures stated in a written company handbook. (Doc. 1-2.)[1] The handbook included a confidentiality provision stating that "confidential information is a valuable asset of the

---

[1] Gold Medal attached to the initial Complaint a copy of the company handbook containing the confidentiality provisions as well as a copy of the written acknowledgment of receipt dated November 22, 2010. (Doc. 1-2 at PageID 18–103, 106.)

2

Company, the development of which required a great investment of human and financial assets and resources by the Company." (*Id.* at PageID 100.) Confidential information was defined to include "company accounts, trade secrets, customer and price lists, formulas, company records, contract quotations and bids, financial information and computer generated information." (*Id.*) It further stated that the employees will not "during their employment with the Company or any time thereafter, disclose or disseminate confidential information to third parties without written consent of the Company." (*Id.*) However, the handbook contained a provision both disclaiming its enforcement as a binding contract and authorizing Gold Medal to modify its terms at any time:

> This employee handbook is presented for informational purposes only, and can be changed at any time by Gold Medal Products Company with or without notice. This handbook is not an employment contract, expressed or implied.

(Doc. 1-2 at PageID 22.) In reliance on his non-disclosure promises, Gold Medal alleges that it "gave [Sunderhaus] access to Gold Medal recipes and allowed him to help develop and update them." (Doc. 9 at PageID 130.)

    **c.**  **Bell Flavors and Fragrances, Inc.**

Defendant Bell Flavors and Fragrances, Inc. ("Bell Flavors") is an Illinois flavor company with its principal place of business in Illinois and several international business locations. (*Id.* at PageID 124.) It works with food companies to develop flavors for a variety of applications including beverages and bakery, confections, dairy, and savory food products. (*Id.* at PageID 130–31.) At an unspecified date, but prior to March 2014, Gold Medal engaged Bell Flavors to help develop flavors for multiple food products. (*Id.* at PageID 131–32.) Bell Flavors repeatedly visited Gold Medal in Ohio and had access to Gold Medal's confidential information. (*Id.* at PageID 132.) Bell Flavors entered into a written confidentiality agreement with Gold

3

Medal in April 2014 pursuant to that engagement. (Doc. 13-3 at PageID 271.)[2] Bell Flavors promised to maintain in strict confidence during and after performance of their services information related to Gold Medal's business, product formulations, and other intellectual property. (*Id.*)

2. **Sunderhaus Joins Bell Flavors and Allegedly Discloses Confidential Information**

In March 2014, Sunderhaus left employment with Gold Medal and joined Bell Flavors as a savory flavorist. (Doc. 9 at PageID 130–31.) Gold Medal asked Sunderhaus during his exit

---

[2] The confidentiality agreement stated as follows:

> Whereas Gold Medal Products Co. ("Gold Medal") wishes to engage Bell Flavors and Fragrances, Inc. ("Bell") to develop color systems, flavors and/or formulations for use in Gold Medal products and/or sell existing color systems, flavors and formulations (the "Project"), Bell agrees that they will maintain information related to the Gold Medal business, as well as information related to the equipment and/or methods utilized and formulations developed, sold and/or produced for Gold Medal (including the fact that Gold Medal is engaged in any project), in strict confidence.
>
> Gold Medal has commercially valuable information that is vital to the success of Gold Medal's business, including but not limited to, the names and addresses of the customers and suppliers of Gold Medal, product formulations and ingredients, intellectual property, trade secrets and manufacturing processes, personnel information, financial information and the marketing needs, habits and strategies of Gold Medal. Bell recognizes and acknowledges that this and other information related to the Gold Medal business are valuable, special and unique assets. Bell will not, during or after the performance of their services, disclose to any person, firm, corporation, association, or other entity, or use for their own benefit, any of Gold Medal's confidential business information or intellectual property that may be revealed to them, for any reason or purpose whatsoever, including any attempts by Bell to "knock-off" any Gold Medal product.
>
> Furthermore, new or unique formulations discovered, conceived or developed, either individually or in collaboration with Gold Medal, during the course of and for the purposes of their services, will not be used for, shared with or disclosed to other clients of Bell or competitors of Gold Medal. Bell assigns to Gold Medal as its exclusive property all intellectual property and contractual rights, if any, pertaining to the particular application of products created, formulated and manufactured for Gold Medal by Bell.
>
> The provisions of this agreement shall supersede and prevail over any other arrangements, either oral or written, as to all Gold Medal information disclosed or received in connection with the services above mentioned. This agreement shall be construed in accordance with the laws of the State of Ohio. Bell agrees that any breach of this agreement, whether intentionally or unintentionally, will give rise to all remedies and damages available under the law, including injunctive relief.

(Doc. 13-3 at PageID 271.)

4

interview on March 4, 2014 whether his employment at Bell Flavors would relate to products that compete with Gold Medal food products. (*Id.* at PageID 131.) Sunderhaus stated that he would be working with savory flavors and unrelated products, and he assured Gold Medal that he would not use or disclose Gold Medal's confidential information. (*Id.*)

Bell Flavors met with Shanghai Angke Foods Co., Ltd., a Chinese competitor of Gold Medal, in May 2015 at Bell Flavors's headquarters in Illinois. (*Id.* at PageID 133.) Upon information and belief, Bell Flavors assigned Sunderhaus to meet and work with Shanghai Angke for the purpose of developing a product to compete with Gold Medal's Glaze Pop® product. (*Id.*) Gold Medal contacted Bell Flavors to express its concern that Sunderhaus would divulge or use its confidential information if he worked on competitors' popcorn glaze products. (*Id.* at PageID 133–35.) Bell Flavors responded that Gold Medal's recipes were not trade secrets, but that Sunderhaus had not disclosed any Gold Medal confidential information to Bell Flavors. (*Id.*) Shanghai Angke changed its caramel-flavored popcorn glaze product. (*Id.* at PageID 135.) Gold Medal alleges upon information and belief that Bell Flavors caused Sunderhaus to work on popcorn glaze products for competitors of Gold Medal, including the Shanghai Angke caramel-flavored popcorn glaze product. (*Id.* at PageID 135.)

**B.    Procedural Posture**

Gold Medal initiated this suit against Sunderhaus and Bell Flavors on March 8, 2016. (Doc. 1.) It filed the First Amended Complaint on June 10, 2016. (Doc. 9.) Gold Medal asserts the following causes of action:

   I.   Misappropriation of trade secrets pursuant to 18 U.S.C. § 1836, *et seq.* [Defend Trade Secrets Act] against both Defendants;
  II.   Misappropriation of trade secrets pursuant to Ohio Revised Code § 1333.61, *et seq.* against both Defendants;
 III.   Breach of contract against Sunderhaus;
  IV.   Promissory estoppel against Sunderhaus; and

5

V. Breach of contract against Bell Flavors.

(Doc. 9 at PageID 136–41.)

On July 5, 2016, Defendants filed the pending Motion to Dismiss alleging a lack of personal jurisdiction as to Counts I, II, and V, failure to join an indispensable party as to Counts I and II, and failure to state a claim upon which relief can be granted as to Counts I and III–V. (Doc. 13-1 at PageID 154–56, 159.) The Motion is fully briefed, and the Court held an oral argument hearing on March 21, 2017.

## II.    LEGAL STANDARDS FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move for dismissal based on lack of personal jurisdiction. The plaintiff bears the burden of proving that the court can exercise personal jurisdiction over the defendant. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). When a district court exercises its discretion to hold an evidentiary hearing on the jurisdiction issue, then the plaintiff must establish jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). On the other hand, where facts are disputed and the district court bases its decision solely on the basis of written submissions without an evidentiary hearing, then "the plaintiff's burden is solely to make a *prima facie* showing that jurisdiction exists." *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 479–80 (6th Cir. 2015). "Under these circumstances, this court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in the light most favorable to the nonmoving party." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citations omitted). The Court will apply the *prima facie* standard to this case with the agreement of the parties.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To

withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

### III. ANALYSIS

#### A. Counts I and II: Misappropriation of Trade Secrets

Gold Medal asserts claims for misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") in Count I and of Ohio's codification of the Uniform Trade Secrets Act, Ohio Revised Code § 1333.61, *et seq.*, in Count II. Defendants assert that the Court cannot exercise personal jurisdiction over Sunderhaus or Bell Flavors as to the misappropriation of trade secret claims, that Bell Flavors is an indispensable party to these claims, and that the DTSA claim fails as a matter of law because the alleged acts of misappropriation occurred before the its effective date.[3] The Court will begin by examining the personal jurisdiction issue.

##### 1. Personal Jurisdiction Legal Standard

A district court's exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *Brunner v. Hampson*, 441 F.3d

---

[3] A party can bring a claim under the DTSA only "with respect to any claim for misappropriation of a trade secret . . . for which act occurs on or after the date of enactment of this [DTSA]." Pub. L. No. 114-153 § 2(e). The DTSA was enacted on May 11, 2016.

7

457, 465 (6th Cir. 2006); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Ohio's long-arm statute, Ohio Revised Code § 2307.382, does not extend to the constitutional limits of the Due Process Clause. *Calphalon Corp.*, 228 F.3d at 721; *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541, 545 n.1 (1994). Defendants do not dispute that their activities satisfy Ohio's long-arm statute. (Doc. 13 at PageID 161–62.) Therefore, the Court in this case must determine only whether the exercise of jurisdiction over Bell Flavors and Sunderhaus satisfies constitutional due process.

To satisfy the Due Process Clause, a defendant must have had "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted). A defendant's contacts with the forum state can give rise to either general or specific jurisdiction. Gold Medal asserts that this Court has specific jurisdiction over Defendants. Specific jurisdiction subjects a defendant to jurisdiction only for claims that arise from or relate to the defendant's contacts with the state. *Id.*

The Sixth Circuit applies the following test for specific jurisdiction:

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549–50 (6th Cir. 2016) (emphasis in the original) (citation omitted). "[M]ore than mere but-for causation is required to support a finding of [specific] personal jurisdiction." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 507 (6th Cir. 2014). "[O]nly consequences that *proximately* result from a party's contacts with a forum state will give rise to jurisdiction." *Id.* at 508 (emphasis added). "[I]t is axiomatic

8

that, in assessing a defendant's relationship with a given forum, the Court must evaluate the defendant's contacts at the time of the alleged wrongdoing." *Stolle Mach. Co., LLC v. RAM Precision Indus.*, No. 3:10-CV-155, 2011 WL 6293323, at *4 (S.D. Ohio Dec. 15, 2011), *aff'd*, 605 F. App'x 473. To have specific jurisdiction over a defendant, the plaintiff must prove that the defendant had "sufficient contacts with the forum with respect to the claim at issue." *Dull v. Energizer Personal Care, LLC*, No. 3:14-cv-195, 2015 WL 5308871, at *8 (S.D. Ohio Sept. 11, 2015).

The Supreme Court examined the minimum contacts necessary to create specific jurisdiction in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). It stated that the "inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 1121 (internal quotation and citation omitted); *see also Calder v. Jones*, 465 U.S. 783, 788 (1984) (same). It instructed that the district court must focus on the defendant's contacts with the forum state, not on the plaintiff's contacts. *Walden*, 134 S. Ct. at 1119, 1122. "[A] plaintiff's contacts with the forum State cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* at 1122 (internal quotation and citation omitted). The Supreme Court also instructed that the district court must examine "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. That is, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* It follows that a plaintiff's injury is "jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* at 1125.

### 2. Personal Jurisdiction over Bell Flavors as to Counts I and II

Defendants argue that the Court lacks personal jurisdiction over Bell Flavors as to Counts I and II. Bell Flavors has a more attenuated connection to Ohio than does Sunderhaus personally. Gold Medal asserts in Counts I and II that Bell Flavors caused Sunderhaus to use the trade secret information that he acquired during his employment for Gold Medal for the benefit of Bell Flavors. Notably, Counts I and II are not based on Bell Flavors's performance of services for Gold Medal. Gold Medal does not allege that Bell Flavors wrongfully disclosed or used confidential information it learned directly from performing services for Gold Medal. Accordingly, the Court will examine only Bell Flavors's contacts with Ohio related to Sunderhaus's disclosure or use of trade secret information to determine whether the Court has specific jurisdiction over Bell Flavors as to those claims. *See Dull*, 2015 WL 5308871, at *8 (stating that specific jurisdiction must be based on contacts with the forum related to the claim at issue).

Taking all inferences in favor of Gold Medal, Gold Medal alleges that Bell Flavors hired Sunderhaus to work as a savory flavorist knowing he had been employed by Gold Medal in Ohio and had acquired Gold Medal trade secrets. It further alleges that Bell Flavors directed Sunderhaus to work on popcorn glaze products competitive with Glaze Pop® product. It alleges that Gold Medal and Bell Flavors engaged in pre-suit correspondence in early October 2015 about Gold Medal's concerns that Sunderhaus would violate his confidentiality obligations to it. (Doc. 9 at PageID 133.) Gold Medal alleges that Bell Flavors disavowed Sunderhaus's confidentiality obligations, refused to deny Sunderhaus's involvement in projects involving competitive popcorn glazes, refused to remove Sunderhaus from popcorn glaze projects, and denied that Sunderhaus had disclosed confidential information regarding Gold Medal's recipes.

Therefore, at least since October 2015, Bell Flavors has known that Gold Medal accused Sunderhaus of disclosing or utilizing its trade secret information originating from Ohio.

Gold Medal asserts that the Court can assert jurisdiction over Bell Flavors because its employee, Sunderhaus, worked for Gold Medal in Ohio, Sunderhaus obtained Gold Medal's trade secrets in Ohio, and Bell Flavors instructed Sundershaus to use or disclose those trade secrets for its benefit knowing that Gold Medal would suffer tortious injury in Ohio. Two aspects of this argument bear close examination. First, Gold Medal is arguing that the state in which the plaintiff felt the effects of the tortious conduct is materially relevant to the jurisdiction argument. Second, Gold Medal is arguing that the conduct of Sunderhaus in Ohio, before he was Bell Flavors's agent, is attributable to Bell Flavors.

To begin, Gold Medal errs by placing too much emphasis on the fact that Gold Medal felt the effect of Bell Flavors's allegedly tortious conduct in Ohio. The Supreme Court in *Walden* "rejected" the theory that personal jurisdiction can be based on intentional acts taken outside a forum state which the defendant knows will cause effects inside the forum state. *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015), *cert. denied sub nom. Maxitrate Tratamento Termico E Controles v. Allianz Seguros S.A.*, 136 S. Ct. 336 (2015); *see also Campinha-Bacote v. Wick*, No. 1:15-cv-277, 2015 WL 7354014, at *4–5 (S.D. Ohio Nov. 20, 2015) (quoting *Maxirate* for same principle); *Zellerino v. Roosen*, 118 F. Supp. 3d 946, 951 (E.D. Mich. 2015) (concluding that, after *Walden*, specific jurisdiction does not exist over a defendant in a forum "solely because the effects of the intentional act are felt there"); *but see Horter Investment Mgmt., LLC v. Cutter*, No. 1:15-CV-477, 2016 WL 339927, at *4 (S.D. Ohio Jan. 28, 2016) (not addressing *Walden*, but holding that jurisdiction was proper over a defendant who "purposefully directed tortious conduct to an Ohio citizen and caused

substantial injury to an Ohio citizen"). Rather, jurisdiction over Bell Flavors must be based on the contacts that "defendant [*it*]*self*" creates with Ohio. *Walden*, 134 S. Ct. at 1122 (emphasis in the original). Here, Bell Flavors itself had no direct contacts with Ohio giving rise to trade secrets claims.

As to whether Sunderhaus's connections to Ohio can be imputed to Bell Flavors, the Sixth Circuit in one case did impute the conduct of an agent in the forum state to his principal when the principal subsequently ratified that conduct. *Stolle Mach.*, 605 F. App'x at 481. In that case, Stolle Machinery accused its former employee, Shu An, of misappropriating trade secrets to benefit a new company, SLAC, formed by Shu An. *Id.* at 476–78. The court concluded that Stolle Machinery had stated a *prima facie* case of jurisdiction over Shu An and SLAC:

> Stolle has made a *prima facie* showing that An purposefully availed himself of the privilege of employment in Ohio and that he took drawings and other information from Stolle while he was there. Stolle has also made a *prima facie* showing that An caused a consequence in Ohio by his subsequent actions in China—founding SLAC, allegedly with the aid of confidential information that he took from Stolle, and soliciting Stolle's customers. Furthermore, Stolle's entire cause of action arises from An's actions while he was in Ohio. And on both of the first two prongs of this jurisdictional analysis, the contacts that An, the agent, had with Ohio can be imputed to SLAC, the principal that has subsequently ratified his conduct in Ohio.

*Id.* at 481.

The facts in this case are distinguishable in two ways. First, the Sixth Circuit suggests that Shu An wrongfully took Stolle Machinery's drawings and information when he was in Ohio and SLAC ratified that wrongful conduct. Gold Medal has not alleged that Sunderhaus took wrongful acts in Ohio which Bell Flavors could have ratified. Sunderhaus obtained Gold Medal's trade secrets lawfully during the normal course of his employment for the company. Second, the wrongful conduct of Shu An was attributed to a principal entity, SLAC, which Shu An personally formed. The relationship between Shu An and SLAC was significant, as was

12

recognized by a sister district court in the time between the district court and the Sixth Circuit decisions in *Stolle Machinery*:

> [I]n the context of a trade secret claim, the operative facts relate to Ohio where the defendant acquires trade secrets by virtue of his employment with an Ohio-based company and the misappropriation causes harm in Ohio. Such facts may also tie in a *company formed by the former employee* by virtue of the company's ratification of the misappropriation.

*Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 164, 168 (S.D. Ohio 2012) (citing *Stolle Machinery* district court opinion) (emphasis added). The *Dayton Superior* court applied *Stolle Machinery* to impute a defendant employee's acts to the new company he helped form before leaving employment with the plaintiff when those acts were performed "on behalf of and were ratified by" the new company. *Id.* at 168. Here, conversely, Sunderhaus did not form Bell Flavors; he is a mere employee. Sunderhaus did not commit any tortious acts while working for Gold Medal in Ohio, nor did he take any acts on behalf of Bell Flavors while working in Ohio. The Court, therefore, will not exercise jurisdiction over Bell Flavors solely on the authority of *Stolle Machinery* or *Dayton Superior*.

A comparison of the facts alleged in this case with other trade secret misappropriation cases is useful. For example, in *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714 (D.S.C. 2007), the district court held that personal jurisdiction could be asserted in South Carolina over SeverCorr, a Mississippi company, and its employee, John Bell, who had previously worked for the plaintiff, Nucor Corporation, a South Carolina company. Nucor alleged that SeverCorr and Bell conspired for Bell, while he was still an employee of Nucor, to take Nucor's confidential information and computer records and to solicit away Nucor's employees to join ServerCorr. *Id.* at 720, 722–23. Bell allegedly took the tortious acts in favor of the conspiracy in South Carolina. The Court held that ServerCorr had sufficient minimum contacts with South Carolina to satisfy due process when it, "through its agent Bell, intentionally and specifically directed communications into

13

South Carolina for the purpose of enticing Nucor employees to join its employ and to solicit Nucor employees to misappropriate Nucor's trade secrets." *Id.* at 723.

Conversely, a district court in North Dakota held that it lacked jurisdiction over an Oklahoma distributor who allegedly obtained trade secrets about a North Dakota bakery from its employee, Myron Dunker, a former employee of the bakery. *Drayton Enters., LLC v. Dunker*, 142 F. Supp. 2d 1177 (D.N.D. 2001). Significantly, Dunker lived in Minnesota and was not employed by the North Dakota bakery when he was hired by the Oklahoma distributor. *Id.* at 1183. Dunker's only remaining connection to North Dakota was a non-compete agreement he had signed with the bakery. *Id.* The district court found that the distributor's contact with North Dakota were fortuitous and attenuated because the distributor did not enter into North Dakota to solicit Dunker, and because Dunker had obtained the trade secret information by legitimate means in North Dakota before moving out of the state. *Id.* at 1184. The district court concluded that "the hiring of Dunker for the alleged purpose of obtaining trade secrets gained in North Dakota and protected by a North Dakota contract" was not sufficient to create jurisdiction over the Oklahoma distributor. *Id.* at 1183. The fact that the injury was felt in North Dakota also was not sufficient to create jurisdiction. *Id.* at 1184–85; *see also Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007) ("[T]he mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong.")

The facts here relevant to Bell Flavors are more similar to *Drayton Enterprises* than to *Nucor Corp.* Gold Medal does not allege that Bell Flavors traveled to Ohio to recruit, interview, or hire Sunderhaus. It does not allege that Sunderhaus took actions in Ohio as Bell Flavors's agent. More specific to the misappropriation claims, Gold Medal does not allege that Bell

14

Flavors hired Sunderhaus for the purpose of obtaining Gold Medal's trade secret information nor for the purpose of helping Gold Medal's competitors formulate competing food products. Similar to the facts in *Drayton Enterprises*, Sunderhaus acquired the trade secret information in Ohio by legitimate means and only is alleged to have taken wrongful acts outside of the forum state more than one year later. For all of these reasons, the Court concludes that it cannot— consistent with due process—exercise personal jurisdiction over Bell Flavors as to the misappropriation of trade secrets claims stated in Counts I and II.

### 3. Conclusion as to Counts I and II

The Court must dismiss Counts I and II against Bell Flavors for lack of personal jurisdiction. Defendants argue that the Court should dismiss Counts I and II against Sunderhaus also on the basis that Bell Flavors is an indispensable party to those claims for purposes of Federal Rule of Civil Procedure 19. Gold Medal conceded at the oral argument hearing that Bell Flavors is an indispensable party as to Counts I and II. A judgment rendered in Bell Flavors's absence against its employee, Sunderhaus, would prejudice it. The parties have not suggested and the Court is not aware of any means by which that prejudice could be ameliorated. Therefore, the Court cannot in equity and good conscience proceed with Counts I and II against Sunderhaus, even assuming the Court can exercise personal jurisdiction over Sunderhaus. *See* Fed. R. Civ. P. 19 ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.") The Court will dismiss Counts I and II against Sunderhaus also. The Court expresses no opinion as to whether personal jurisdiction exists over Sunderhaus for Counts I and II, nor as to whether any acts of misappropriation occurred after the effective date of the DTSA.

**B.   Count III and IV:  Breach of Contract Claim and Promissory Estoppel Claim Against Sunderhaus**

Defendants next argue that Counts III and IV fail as a matter of law because Gold Medal has not adequately pleaded a breach of contract or promissory estoppel claim against Sunderhaus.  Defendants suggest that Gold Medal cannot base either claim solely on Sunderhaus's written agreement to abide by confidentiality provisions in the company handbook because it contains a contractual disclaimer and a provision authorizing Gold Medal to unilaterally modify the handbook.  Defendants argue that these provisions vitiate the mutual assent needed for a contract and the reasonable reliance needed for a promissory estoppel claim.  *See*, *e.g.*, *Stanich v. Hissong Group, Inc.*, No. 2:09-cv-143, 2010 WL 3732129, at *4–6 (S.D. Ohio Sept. 20, 2010) ("[D]isclaimers that handbooks are not intended to form a contract vitiate the mutual assent required for contract formation."); *Senter v. Hillside Nursing Center of Willard, Inc.*, 335 F. Supp. 2d 836, 843 (N.D. Ohio 2004) (stating that mutual assent is absent when the handbook disclaims intent to create a contract or allows one party to unilaterally amend the provisions); *Karnes v. Doctors Hosp.*, 51 Ohio St. 3d 139, 555 N.E.2d 280, 282 (1990) (stating that contractual disclaimers in an employment manual preclude its enforcement as a contract); *Finsterwald-Maiden v. AAA S. Cent. Ohio*, 115 Ohio App. 3d 442, 685 N.E.2d 786, 790 (1996) ("Courts have considered provisions permitting the employer to unilaterally alter the handbook at any time as an indication of a lack of mutual assent.")

The Court will not grant dismissal on this basis because it relies on too narrow a construction of the Amended Complaint.  Gold Medal's claims are based not only on his written agreement to abide by the confidentiality provisions in the handbook, but also on Sunderhaus's oral promises.  (*Id.* at PageID 129.)  Gold Medal alleges that it demonstrated its reliance on those promises, and it provided consideration to Sunderhaus for his promises, by continuing to employ

16

him and by offering him access to its confidential flavor recipes. The allegations in the Amended Complaint are sufficient at this pleading stage to state claims for breach of contract and promissory estoppel. The Court will deny the Motion to Dismiss as to Counts III and IV against Sunderhaus.

C.    **Count V:  Breach of Contract Claim Against Bell Flavors**

In Count V, Gold Medal alleges that Bell Flavors breached its obligations under the written confidentiality agreement it signed on April 24, 2016. (Doc. 9 at PageID 140–41.) In the written agreement, Bell Flavors promised to not use or disclose any of the Gold Medal confidential business information or intellectual property revealed to it in connection with its engagement to provide services to Gold Medal. (Doc. 13-3 at PageID 271.) Bell Flavors agreed that the protected information included "the names and addresses of the customers and suppliers of Gold Medal, product formulations and ingredients, intellectual property, trade secrets, and manufacturing processes, personnel information, financial information and the marketing needs, habits and strategies of Gold Medal." (*Id.*) Defendants move to dismiss the claim arguing that Gold Medal failed to state a plausible claim for relief and that the Court cannot exercise personal jurisdiction over Bell Flavors. The Court agrees with Defendants that Gold Medal has not stated a plausible claim for relief regardless of whether the Court could exercise personal jurisdiction over Bell Flavors for this claim.

To begin, the Court rejects Gold Medal's argument that the confidentiality agreement was intended to bar Bell Flavors from using or disclosing confidential information that Sunderhaus separately learned during his employment at Gold Medal. The agreement makes several references to the fact that it arises from "services" Bell Flavors provided to Gold Medal. (Doc. 13-3 at PageID 271.) For example, Bell Flavors promised in the agreement to not "during

17

or after the performance of its services" disclose or use Gold Medal's confidential information for its benefit. (*Id.*) Also, the parties agreed that the written agreement would supersede and prevail over any other arrangement "as to all Gold Medal information disclosed or received in connection with the services above mentioned." (*Id.*) Moreover, Gold Medal and Bell Flavors signed the agreement *after* Sunderhaus had left employment with Gold Medal. Gold Medal could have, but did not, include explicit language barring Bell Flavors from using or disclosing confidential information Sunderhaus had obtained.

The bare allegation in Court V that "[o]n information and belief, Bell Flavors used for its own benefit Gold Medal's confidential business information" is not sufficient. (Doc. 9 at PageID 141.) Allegations based upon information and belief are appropriate only "where a complaint contains supporting factual allegations." *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014). A plaintiff "must plead facts that create a permissible inference of wrongdoing." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (internal quotation and citation omitted). "The mere fact that someone believes something to be true does not create a plausible inference that it is true." *Id.*

Gold Medal does not state any *facts* to support its allegation. It does not assert that Bell Flavors used or disclosed any information it learned from performing services for Gold Medal. Instead, Gold Medal asserts facts suggesting that Sunderhaus used the information he obtained as a Gold Medal employee to benefit Bell Flavors and Shanghai Angke, including specifically helping to develop a caramel-flavored popcorn glaze to compete with Gold Medal's Glaze Pop®. (Doc. 9 at PageID 133–36.) Sunderhaus's alleged disclosure or use of confidential information does not constitute a breach of Bell Flavors's separate written agreement with Gold Medal. The

18

breach of contract claim against Bell Flavors lacks "facial plausibility" because Gold Medal has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted insofar as Counts I and II against both Defendants and Count V against Bell Flavors are dismissed. The Motion is denied insofar as Counts III and IV against Sunderhaus are not dismissed.

DATED this 13th day of April, 2017.

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge